Steven J. Mirsky (SBN 297370)
**MIRSKY CORPORATE ADVISORS, APC**
901 Dove. St, Ste. 120
Newport Beach, CA 92660
(949) 200-6837
Email: smirsky@mirskycorporateadvisors.com.
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SDLA COURIER SERVICE, INC., a California corporation; and JAMES GOODMAN, an individual,<br><br>Plaintiffs.<br>v.<br>UNLIMITED CAPITAL, LLC, a Connecticut limited liability company; TRITON RECOVERY, LLC, a Florida limited liability company; SAMUEL STERNS, an individual; LEOPOLD VARGAS, an individual; ERICA GILERMAN, an individual; and DOES 1-20. | Case No.: 2:24-cv-07544 TJH (Asx)<br><br>Hon: Terry J. Hatter, Jr.<br><br>**RICO CASE STATEMENT** |

Plaintiffs, SDLA Courier Service, Inc. ("SDLA") and James E. Goodman, Jr. ("Goodman") (collectively, the "Plaintiffs"), by and through their undersigned attorney are filing this RICO Case Statement, pursuant to the Court's Order, dated September 6, 2024:

**1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962 (a), (c) and (d), *provided that* the Plaintiffs reserve the right to amend this response if new information arises during discovery.

**2.    List the defendants and state the alleged misconduct and basis of liability of each defendant**.

1    The defendants are Unlimited Capital, LLC ("Unlimited"), Triton Recovery, LLC ("Triton"), Samuel Sterns ("Sterns"), Leopold Vargas ("Vargas") and Erica Gilerman ("Gilerman").

Unlimited's liability is based on the fact that Unlimited is in the business of lending money; that Unlimited knowingly lent money at a rate more than twice the enforceable rate to consumers through a financing scheme called "merchant cash advance", including, but not limited to entering into two merchant cash advance agreements with the Plaintiffs; that Unlimited serviced the unlawful debt arising from the merchant cash advance financing scheme; that Unlimited set up and implemented ACH withdrawals to collect proceeds of unlawful debt; and that Unlimited distributed the proceeds of unlawful debt for its own benefit and with other members of enterprise. Unlimited also derived income through the collection of unlawful debt and used ill-gotten proceeds in the establishment, maintenance, and operation of the enterprise.

Triton's liability is based Triton's entry into certain agreements with Unlimited and its actions to aid, abet, counsel, and collect unlawful debt on behalf of Unlimited. In addition, Triton derived income from the collection of unlawful debt and used those ill-gotten proceeds in the establishment and operation of the enterprise.

Sterns's liability is based on being employed by Unlimited as a principal and directly participating in originating transactions and in the management, operations, and affairs of the enterprise.

Vargas's liability is based upon being employed by Triton as Chief Executive Officer and directly participating in the operation and management of Triton, along with directly participating in the management, operation, and conduct of the enterprise itself.

Gilerman's liability is based upon being employed by Triton as Chief Legal Officer and participating in the operation or management of Triton along with acting as legal counsel to Unlimited and directly participating in the devising of schemes and collection of unlawful debts on behalf of Triton, Unlimited, and the enterprise.

**3.  List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

Plaintiffs are unaware of any other wrongdoers at this time, *provided that* the Plaintiffs reserve the right to amend this response if new information arises during discovery.

**4. List the alleged victims and state how each victim was allegedly injured.**

Plaintiffs SDLA and Goodman are the alleged victims.

SDLA paid the Defendants at least $630,761 in payments for the unlawful debt. SDLA also paid legal fees to obtain a temporary restraining order against Defendants in June 2024. Defendants also issued one or more UCC lien notices to Amazon, which prevented SDLA from receiving revenue from its only customer, which, in turn, forced SDLA to terminate over 450 employees. Defendants also caused Amazon to terminate its contract with SDLA which has harmed SDLA by preventing it from receiving the $30 million in revenue per year under its contract with Amazon.

Goodman was required to sign a personal guaranty under each Merchant Cash Advance agreement and under the Settlement Agreement. Goodman has incurred significant damages, described in more detail below, as a result of terminating employees, filing lawsuits against the Defendants, and loss of profits related to the Amazon contract with SDLA.

**5.  Describe in detail the pattern of racketeering activities or collection of unlawful debt alleged for each RICO Claim.**

    **a.  List the predicate acts and the specific statutes that were allegedly violated.**

Unlimited and SDLA entered into the Merchant Cash Advance Agreement dated March 14, 2024 in violation of 18 U.S.C. § 892, 18 U.S.C. § 1961(6), Cal. Const. Art. XV, Sec. 1 and Cal. Civ. Code § 1916-3, and Cal. Fin. Code § 22009.

Unlimited and SDLA entered into the Merchant Cash Advance Agreement dated June 3, 2024 in violation of 18 U.S.C. § 892, 18 U.S.C. § 1961(6), Cal. Const. Art. XV, Sec. 1 and Cal. Civ. Code § 1916-3, and Cal. Fin. Code § 22009.

Unlimited and SDLA entered into the Settlement Agreement dated July 11, 2024 in violation of 18 U.S.C. § 892, 18 U.S.C. § 1961(6), Cal. Const. Art. XV, Sec. 1 and Cal. Civ. Code § 1916-3, and Cal. Fin. Code § 22009.

Between October 2023 and July 20204, Unlimited entered into one or more merchant cash advance agreements with businesses in the State of California, as indicated by UCC-1 filings with the California Secretary of State in violation of 18 U.S.C. § 892, 18 U.S.C. § 1961(6), Cal. Const. Art. XV, Sec. 1 and Cal. Civ. Code § 1916-3, and Cal. Fin. Code § 22009.

Wire fraud under 18 U.S.C. § 1343.

> **b. Provide the date of each predicate act, the participants in each predicate act, and the description of facts constituting each predicate act**.

Gilerman, as an attorney for Unlimited, filed Unlimited Articles of Organization with the Connecticut Secretary of State on or about February 3, 2023.

Since October 2023, Unlimited has filed 5 cases in the State of New York seeking to enforce merchant cash advance agreements. Gilerman is the attorney of record for Unlimited in at least four cases, including, but not limited to *Unlimited Capital LLC v. Massey Powersports LLC et al,* Index No. 510333/2024, *Unlimited Capital LLC v. Obsession Financial Services LLC et al*., Index No. 518453/2024, *Unlimited Capital LLC v. Raymond Commercial Contracting LLC et al.*, Index No. 530971/2023, *Unlimited Capital LLC v. Shirjee LLC et al*, Index No. E2023014853.

In other New York filings, such as in the matter *Precision Concrete and Excavation LLC, et al. v. Seamless Capital Group, LLC, et. al* with Index No. 601795/2024, a certain Vladimir Kaminsky affirmed under penalty of perjury on behalf of Unlimited on February 5, 2024 that Unlimited retains Triton as its collection agent.

In the instant matter, Unlimited, through a presently unknown employee, negotiated the Merchant Cash Advance Agreement, dated March 14, 2024. Unlimited used electronic or telephonic communication to negotiate the transaction. Unlimited issued the agreement electronically. Goodman signed the contract electronically. Unlimited knew that it was charging rates in excess of twice the enforceable limit when it entered into the agreement with

RICO CASE STATEMENT - 4

1  SDLA. In California, the maximum interest rate to be charged for an unlicensed lender is 10%.
2  For instance, the agreement stated that Unlimited would provide $360,000 to SDLA in
3  exchange for repayment of $599,600 in 100 calendar days – which is vastly greater than a 10%
4  interest rate by an unlicensed lender in California. The agreement also stated that it was a
5  purchase of future receivables, when, in fact, the agreement constituted a usurious loan.

6  Records with the California Secretary of State show that Unlimited has at least 5 other
7  active UCC-1s filed against borrowers in California

8  Unlimited, through Sterns or a currently unknown employee of Unlimited, negotiated the
9  Merchant Cash Advance Agreement, dated June 3, 2024. Unlimited used electronic or
10  telephonic communication to negotiate the transaction. Unlimited issued the agreement
11  electronically. Goodman signed the contract electronically. Unlimited knew that it was
12  charging rates in excess of twice the enforceable limit when it entered into the agreement with
13  SDLA. The agreement provided SDLA with $340,000 in exchange for an absolute obligation
14  to repay unlimited $989,340.00 over a term of 110 calendar days. The agreement stated that it
15  was a purchase of future receivables, when, in fact, the agreement constituted a usurious loan.

16  On or about June 25, 2024, Unlimited signed a power of attorney authorizing Vargas at
17  Triton to act on its behalf.

18  Triton, through Gilerman, negotiated the Settlement Agreement. The Settlement
19  Agreement was signed on July 11, 2024. Unlimited used electronic or telephonic
20  communication to negotiate the transaction. Unlimited issued the agreement electronically.
21  Goodman signed the contract electronically. Unlimited knew that it was charging rates in
22  excess of twice the enforceable limit when it entered into the agreement with SDLA. The
23  agreement stated that it was a purchase of future receivables, when, in fact, the agreement
24  constituted a usurious loan.

25  On or about August 7, 2024, SDLA communicated with Triton that Amazon had terminated
26  its contract. Gilerman corresponded with SDLA in an email exchange from on or about August
27  7, 2024 through August 15, 2024 seeking to collect payment under the Settlement Agreement.
28  The merchant cash advance agreements both contain clauses stating that "[m]erchant going

bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivabels, in and of itself, does not constitute a breach of this Agreement."

Each payment was withdrawn from SDLA's account through ACH.

    **c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place, and substance of the alleged misrepresentations and the identity of persons to whom and by whom the alleged misrepresentation were made.**

See answer above. Plaintiff's counsel does not currently have in its possession the complete record of a payments history or all wires provided to Unlimited or Triton. Plaintiff's counsel will obtain this information in the course of the proceeding.

    **d. State whether there has been a criminal conviction for violation of any predicate act.**

Plaintiffs are not aware of any criminal convictions.

    **e. State whether civil litigation has resulted in a judgment with regard to any predicate act.**

SDLA obtained a temporary restraining order against Unlimited on or about June 14, 2024, to have it stop collecting on the merchant cash advance agreements.

    **f. Describe how the predicate act forms a "pattern of racketeering activity".**

Unlimited, Triton, Sterns, Vargas, and Gilerman have a relationship whereby Unlimited originates unlawful debt and Triton's employees – either through Triton or acting on their own behalf- collect unlawful debts from unsuspecting businesses. If Unlimited or Triton is unable to obtain payment from a borrower outside of court, Unlimited through Gilerman or another counsel will file legal action against the borrower with the intent to obtain a default judgment or to force a settlement. In addition, Unlimited, Triton, Sterns, Vargas, and Gilerman devised a scheme to collect unlawful debts by forming an entity and using procedural remedies available Connecticut law in order to collect proceeds from unlawful debts without a hearing

or a trial. In other instances, Unlimited and Triton disregarded corporate formalities to seek judgments against other borrowers to maximize each other's return on investment.

  **g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.**

Unlimited, Triton, Sterns, Vargas, and Gilerman, along with other unknown parties, operate common scheme whereby Unlimited will originate unlawful debt with third parties under terms that Unlimited knows or reasonably know the borrower will likely default on. Unlimited, through Sterns and one or more other parties, then retains the legal services of Gilerman or Triton, which, in turn, operates through Vargas and Gilerman, to collect the proceeds of the unlawful debt.

Here, Unlimited entered into two transactions with SDLA and knew it was unlikely that SDLA would be able to repay. After receiving an injunction, Unlimited retained the services of Triton to induce SDLA to settle.

The activity with SDLA is just part of a broader scheme of the enterprise. Gilerman represents Unlimited as counsel and there is evidence of Gilerman filing lawsuits and forming entities on Unlimited's behalf as counsel.

**6. Describe the alleged "enterprise" for each RICO claim. A description of the enterprise shall include the following:**

  **a. State the name of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

  **b. A description of the structure, purpose, function, and course of conduct of the enterprise;**

  **c. A statement of whether any defendants are employees, officers, or directors of the alleged enterprise;**

  **d. A statement of whether any defendants are associated with the alleged enterprise;**

    **e. A statement of whether plaintiff is alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and**

    **f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation of whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

The enterprise is an informal organization that functions as a continuing unit. Specifically, the enterprise shares a common goal of funding, servicing, and collecting upon unlawful debt that charges interest at more than twice the enforceable rate under the laws of various states, including California, New York, and Connecticut. Defendants Unlimited, Triton, Sterns, Vargas, and Gilerman, and presently unknown third parties, constitute the enterprise.

The members of the enterprise have ongoing relationships with each other through common control/ownership, shared personnel and/or one or more contracts or agreements relating to and for the purpose of collecting fraudulent fees through electronic wires.

Unlimited and Sterns are in the business of originating usurious loans disguised as purchases of receivables. Triton, Vargas, and Gilerman each have a role in applying maximum pressure on defaulting borrowers to collect proceeds of unlawful debt are collected on behalf of Unlimited. The racketeering activities do not differ from that of the usual daily activities of the enterprise because Unlimited's core business is based on lending unlawful debt characterized as a "merchant cash advance" and Triton's core business is debt collection, specifically for merchant cash advance agreements.

Sterns is an employee of Unlimited. Vargas and Gilerman are employees of Triton. Gilerman is counsel to or has acted as counsel to Unlimited.

Each Defendant are members of the enterprise. Each Defendant are perpetrators as they have willfully caused acts to be done in furtherance of the enterprise in violation of federal and state law. The enterprise receives the benefit of receiving ill-gotten proceeds from payments in excess of the amounts that it would have otherwise obtained through traditional loans, financing, or underwriting procedures.

**7. State and describe in detail whether plaintiff is alleging that the pattern of racketing activity and the enterprise are separate or have merged into one entity**.

For reasons set forth above and in the complaint, Plaintiff is alleging that the collection of unlawful debts and the enterprise have merged into one entity. Unlimited is willing to originate and service the agreements so long as a borrower make a timely payment. If a borrower fails to make a payment, Unlimited retains Triton to collect upon the unlawful debts. Unlimited knows that borrowers are likely to default when entering into a contract. Triton knows that they will be reasonably retained upon a borrower's failure to make a payment.

**8.     Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the activities differs from the usual daily activities of the enterprise, if at all**.

The activities of the enterprise do not differ from the usual daily activities of the enterprise. Unlimited is in the business of originating and servicing usurious loans masquerading as a purchase of receivables. Triton is in the business of collecting on usurious loans masquerading as a purchase of receivables beyond the activities of Unlimited.  Sterns, Vargas, and Gilerman are responsible for the ongoing management and operations of the enterprise and their respective employers.

**9.     Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

Defendants receive proceeds from the unlawful debt, which, in turn, are used to fund further business operations or are otherwise taken for personal benefit, e.g. income. Defendants know that these agreements are likely to be defaulted upon and that many borrowers are unlikely to retain counsel to defend claims. As a result, Defendants seek to enforce these agreements through strong arm tactics and extort repayment through the strategic use of judgments and other legal remedies available to it under the Uniform Commercial Code.

**10. Describe the activities of the enterprise on interstate or foreign commerce**.

The activities of the enterprise affect interstate commerce as the enterprise is engaged in and uses instrumentalities of interstate commerce in its daily business activities. All of the

transactions relevant to this case, and, indeed other predicate acts of racketeering activity, were conducted through phone, text, or electronic messaging. All payments were debited via ACH from SDLA's accounts. Unlimited originates unlawful debt in various states across the United States of America and Triton seeks to enforce unlawful debts against borrowers within the State of California and elsewhere in the United States of America.

Further, the enterprise maintains offices in Connecticut, Florida, and New York. The enterprise also uses personnel in these offices to originate, underwrite, fund, service, and collect upon the unlawful debt originated by the enterprise through the extensive use of instrumentalities of interstate commerce, including emails, mail, write transfers, and bank withdrawals processed through an automated clearing house.

Further, the enterprise preys upon borrowers in various states. Court filings in New York and Connecticut reveal that the enterprise sought to enforce unlawful debts with borrowers in various states, such as California, West Virginia, Virginia, Texas, Wisconsin, and Illinois.

All communications between the members of the enterprise and SDLA were conducted by interstate email and mail, wire transfers, or ACH debits and other interstate wire communications. Specifically, the enterprise used interstate emails to originate, underwrite, service, and collect upon the MCA Agreement and the Settlement Agreement, fund the advances under each of the MCA Agreement, and collect the payments via electronic ACH debits.

**11.     If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following:**

       **a.  State who received the income derived from the pattern of activity or through the collection of unlawful debt;**

       **b.  and describe the use or investment of such income**.

Unlimited and Triton each receive income through the collection of unlawful debt. Unlimited and Triton receive income from ill-gotten proceeds from collecting the unlawful debt in the ordinary course of business which is used to fund or invest in the business operations in furtherance of the enterprise to hire employees, lease offices, develop infrastructure, enforce contracts through legal activity, and otherwise carry out daily business activities.

**12. If the complaint alleges a violation in violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Plaintiffs are not alleging a violation of 18 U.S.C. § 1962(b) at this time, *provided that* Plaintiffs reserve the right to change the answer to this question as information is obtained through discovery.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following:**

    a. **State who is employed by or associated with the alleged enterprise; and**

    b. **State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

Unlimited and Triton are "persons" associated as members of the enterprise. Sterns, Vargas, and Gilerman are employees of Unlimited and Triton, respectively, and are therefore employed by the enterprise.

Defendants are each separate and distinct from the enterprise. Nonetheless, each Defendant had a legal and beneficial interest in the ill-gotten proceeds derived from the enterprise. Further, each Defendant knowingly and willfully worked in concert in order to originate and collect unlawful debt.

**14. If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy**.

Gilerman filed the Articles of Organization of Unlimited on February 2, 2023 with the Connecticut Secretary of State.

E2023014853In the matter *Precision Concrete and Excavation LLC, et al. v. Seamless Capital Group, LLC, et. al* with Index No. 601795/2024, a certain Vladimir Kaminsky affirmed on February 5, 2024 that Unlimited retains Triton as its collection agent.

Shortly after SDLA obtained a Temporary Restraining Order in New York, Sterns, on behalf of Unlimited, signed a power of attorney granting Vargas, on behalf of Triton, the ability to act on behalf of Unlimited against SDLA on or about June 28, 2023.

Subsequently, Vargas signed the Settlement Agreement that was negotiated by Gilerman on behalf of Unlimited between Unlimited and SDLA on July 11, 2024.

Gilerman filed a summons and complaint on behalf of Unlimited in the matters *Unlimited Capital LLC v. Massey Powersports LLC et al,* Index No. 510333/2024, *Unlimited Capital LLC v. Obsession Financial Services LLC et al.*, Index No. 518453/2024, *Unlimited Capital LLC v. Raymond Commercial Contracting LLC et al.*, Index No. 530971/2023, *Unlimited Capital LLC v. Shirjee LLC et al*, Index No.

Based on the interconnected nature of the parties, each member of the enterprise sought to divide up the work based on functional area (origination, servicing, collecting) in furtherance of the enterprise. Each member had a common goal of originating and collecting upon unlawful debts. Each Defendant had an understanding of the general nature of the conspiracy as each Defendant understood his or her own role in furthering its goals.

**15. Describe the alleged injury to business and property.**

Unlimited and Triton collected at least $630,761 in ill-gotten proceeds derived from unlawful debt from SDLA. On August 2, 2024, Triton issued a UCC Lien Notice and Power of Attorney to Amazon, which required Amazon to not pay any revenue to SDLA. On August 5, 2024, Amazon terminated its contract with SDLA and retained all of its funds. On or about August 7, SDLA terminated 451 employees in violation of the WARN act and other statutes. SDLA was unable to make final payments in violation of California law because Unlimited had restricted SDLA's access to capital in furtherance of collecting unlawful debt. As such, SDLA has been under investigation by the U.S. Department of Labor and has lost on revenue equal to about $30,000,000 a year with its contract with Amazon.

Unlimited and Triton intended to interfere with the contractual relationship between SDLA in order to maximize pressure and induce SDLA to settle. Unlimited had issued correspondence to SDLA stating that it "was going to make sure that SDLA lost is contract with Amazon and be forced into bankruptcy."

As a direct, foreseeable, and proximate result of the enterprise and their continued attempts to collect on unlawful debts, SDLA and Goodman have suffered economic harms, including direct and consequential damages loss of profits, future profits, and diminution of value in the business in an amount estimated to be $15 million dollars.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

Unlimited is in the business of originating unlawful debt. Unlimited used the proceeds generated from prior business transactions in order to enter into at least two extortionate agreements with SDLA and Goodman. SDLA paid $630,761 under those agreements. When it became apparent that SDLA would be unable to make payments under those agreements, SDLA sought to obtain a restraining order and was granted a restraining order preventing Unlimited from collecting any further payments. SDLA and Triton, acting as agent for Unlimited, entered into the July 11 Settlement Agreement. Knowing that SDLA would not be able to make the payments under the Settlement Agreement, Triton sought to collect the unlawful debt by sending out the UCC Lien Notice to Amazon with the express intent to disrupt SDLA's business relationship with Amazon. Upon receiving the UCC Lien Notice, Amazon terminated its contract with SDLA. Meanwhile, Triton still sought to collect payment to "settle" the dispute for SDLA's failure to pay under the Settlement Agreement, even though SDLA has no source of revenue. The enterprise knowingly sought to collect unlawful debt which resulted in the termination of SDLA's sole source of revenue.

**17. List the damages sustained by reason of the violation of § 1962, indicating the amount for which each defendant is allegedly liable**.

- Direct and consequential damages loss of profits, future profits, and diminution of value in the business in an amount estimated for $15,000,000 with Unlimited and Triton responsible for $7,000,000 each, Sterns, Vargas, and Gilerman each responsible for $333,333.33.
- The costs of the suit in proportion with each defendant
- Reasonable attorneys' fees
- Treble damages

**18. List all other federal causes of action, if any, and provide the relevant statute numbers.**

None at this time, *provided that* Plaintiffs reserve the right to amend this response upon the discovery of new information.

**19.   List all supplement state claims, if any.**

Unfair and Deceptive Acts and Practices, Cal. Bus. & Prof. Code § 17200, Intentional Interference with Contractual Relations, Usury under Cal. Const. Art. XV, Sec. 1 and Cal. Civ. Code § 1916-3, Breach of Contract, Brach of Implied Covenant of Good Faith and Fair Dealing, Fraudulent Misrepresentation, and Unjust Enrichment.

**20.   Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

Plaintiffs expressed extreme urgency in filing this case as Plaintiffs are involved in multiple lawsuits with several other merchant cash advance lenders. As a result, Plaintiffs' counsel has had a very limited opportunity to receive relevant correspondence including, text messages, emails, voice mails, etc. and to review all of the facts and circumstances related to the matter before filing the complaint. Plaintiffs' counsel anticipates that new and material facts will continue to arise through discovery.

Date:   10/6/2024

/s/ Steven J. Mirsky
Steven Mirsky
Attorney for Plaintiffs